United States District Court
Northern District of California

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ARTEM MARTINOV, et al.,

    Defendants.

Case No.: CR 11-00312 SBA (KAW)

ORDER REGARDING DISCOVERY DISPUTE

On December 17, 2013, the Court granted Defendant Artem Martinov's motion to compel third party SunTrust Mortgage's ("SunTrust") compliance with a subpoena duces tecum. In briefing and at a hearing on January 17, 2013, Defendant maintained that SunTrust had still not produced all responsive documents to the subpoena. SunTrust disputed these allegations. On January 31, 2013, the Court issued an order for supplemental briefing on the discovery dispute.

In response to the Court's January 31 order, Defendant filed a second declaration by Marla Shapiro, a purported expert in mortgage lending. SunTrust filed a second declaration by Thomas L. Switzer, SunTrust's Custodian of Records.

Both declarations laid out the declarants' qualifications.[1] As a preliminary matter, Switzer notes that Shapiro's experience has been working for credit unions, rather than with mortgage companies like SunTrust. Switzer Dec. at 8-9. Switzer asserts that credit unions are subject to different regulations than mortgage companies; for example, credit unions are regulated by the Federal Deposit Insurance Corporation ("FDIC"), but SunTrust Mortgage is not—even though its parent company, SunTrust Bank, is an FDIC member. *Id.* at 8. Switzer argues that Shapiro's

---

[1] Although Switzer's declaration states that he has over 39 years of experience in the mortgage lending industry, his resume shows that he actually has 29 years of experience in the industry. *See* Switzer Dec. at 3, Ex. A at 2-3.

experience working in credit unions does not qualify her to make observations about SunTrust's business practices. *Id.* These observations are well-taken, and the Court has considered them in weighing the opinions contained in Shapiro's declaration. The Court also takes note that Shapiro has no personal knowledge regarding SunTrust's records and practices.

Both declarations address the six specific categories of information listed in the Court's January 31 order. Each category is addressed in turn below.

**1. Whether SunTrust had a separate policy document containing the in-house underwriting guidelines that are contained in the Broker-Seller guide**

Shapiro states that, based on her experience, it is highly unlikely that SunTrust "would not use internal policies and procedures for its in-house portfolio loans." Shapiro Dec. at 4. She asserts that federal and/ or state regulators would have required the company to have "specific procedures for any real estate loan placed in its portfolio." *Id.* at 5. For example, the FDIC instructs banks to have certain practices pertaining to credit underwriting, and the Office of the Comptroller of the Currency ("OCC") instruct banks to have procedures for brokered loans that reflect the bank's practices in its direct lending activities. *Id.* at 5-6. In this case, Shapiro argues, the underwriter guidelines contained in the broker-seller manual that has been produced should have been modeled after separate internal underwriting guidelines.

Switzer declares that SunTrust did not have a separate policy document containing in-house underwriting guidelines. He explains that although the broker-seller guide that has been produced has the name "broker" in its title, the document is authored by SunTrust and contains internal SunTrust policies and procedures. In addition, SunTrust is not subject to FDIC regulation because it is not a depository.

Given this explanation, the Court is satisfied with Switzer's attestation that there is no separate policy document containing in-house underwriting guidelines.

///

///

2

### 2. Whether SunTrust was required to have seller-servicer investor guidelines in 2007 because it was a Fannie Mae and Freddie Mac seller-servicer

Shapiro attests that she believes that seller-services like SunTrust were not required by Fannie Mae and Freddie Mac to have their own seller-servicer guidelines, but were provided seller-servicer manuals by these institutions.

Switzer argues that Fannie Mae and Freddie Mac's seller-servicer guidelines are outside of the scope of the subpoena, and therefore were not produced to Defendant by SunTrust. However, SunTrust has provided counsel with copies of the Fannie Mae guidelines at issue. The Court is satisfied with Switzer's attestation that SunTrust does not have separate seller-servicer investor guidelines for the relevant time period.

### 3. Whether SunTrust had a policy or guideline for underwriting loan approval authority limits or loan exception approval requests pertaining to exceptions for low credit scores during the relevant time period

Shapiro opines that SunTrust would have had a policy in place pertaining to loan exception requests on the basis of low credit scores. In response, Switzer attests that there was no such policy or guideline in place with respect to the wholesale line of business through which the loans in this case originated. The underwriting guidelines which SunTrust has already produced contain credit score guidelines for wholesale loans, and refer to exceptions, including a credit score exception. Per these underwriting guidelines, requests for exceptions are to be sent to the "applicable underwriting area." Switzer Dec. at 12. At that point, a wholesale underwriter may approve a credit score exception as a matter of business judgment, so long as the loan is within the underwriter's delegated authority level.

The documents attached to Switzer's declaration show the underwriters who approved the loan at issue did not have "Portfolio Loan Exception Approval Authority," which is defined in a 2003 document titled "SunTrust Mortgage Portfolio Exception Policy." Switzer declares that after a diligent search, he has been unable to locate the 2003 document.

Because Switzer has attested that, after a diligent search, no such policy documents can be located, the Court is satisfied with SunTrust's representations as to this category.

4. **Who, if anyone, was responsible for quality control and pre-funding review of the instant loan?**

Shapiro notes that the loan documents in this case state that the loan was subject to quality control review. She attests that in her experience, quality control is done by a designated individual that has no interest in the loan being funded, and that "most financial institutions the size of SunTrust" would have a designated quality control department. Shapiro Dec. at 8.

Switzer attests that SunTrust did not have a quality control group at the time that the loans were funded, so "any pre-funding review would have been done by the line of business as the loan was being manually underwritten." Switzer Dec. at 13. Switzer attests that the company did not create separate documentation to show that the loan had been checked for quality control, because the quality control check occurred simultaneously with its underwriting.

The Court is satisfied with Switzer's representations as to this category.

5. **Whether SunTrust was required by Fannie Mae and Freddie Mac to have quality control guidelines and procedures in place in 2007**

Shapiro explains that, based on her experience and conversations with employees of Fannie Mae and Freddie Mac, she believes that those companies require lenders to have "a written quality control program in place." Shapiro Dec. at 8-9.

Switzer concedes that SunTrust was required to, and in fact did, have a quality control plan and a quality control department in 2007. But the quality control group did not perform independent pre-funding quality control during the relevant time period. The quality control plan itself was not responsive to Defendant's subpoena because it did not "provide guidance to underwriters responsible for reviewing loan files to insure that the documentation contained in the files . . . were in fact valid." *See* Switzer Dec. at 14.

The Court is satisfied that SunTrust need not produce additional documents related to this category.

///

///

4

### 6. Whether policy documents pertaining to all underwriters, at every level of authority, have been produced

Shapiro notes that SunTrust has not produced any documents pertaining to levels of authority for their underwriters, but has merely produced a copy of employee Kathleen Hall's employment contract.

Switzer explains that the individuals who underwrote the loans at issue, Kathleen Hall and Judi Gerber, have one and one and a half million dollars in delegated lending authority, respectively. He has attached their contracts, which show the amount of their lending approval authorities, to his declaration, even though the contracts are not "policy documents." He attests that there are no other policy documents pertaining to underwriters' levels of authority. In this case, Hall submitted a loan exception request on the basis of the low credit score to Gerber, pursuant to the sentence in the broker-seller guide that has been produced stating, "[a]ny requests for exceptions are required to be sent to the applicable underwriting area." *See* Switzer Dec. at 15. Then, Gerber approved the loan as a matter of business judgment.

The Court is satisfied with Switzer's representations that there are no more responsive documents in this category.

On the basis of Switzer's thorough and persuasive declaration, the Court is satisfied that all responsive policy documents have been produced, and that SunTrust has complied with the Court's December 17, 2012 order granting Defendant's motion to compel.

IT IS SO ORDERED.

Dated: March 19, 2013

KANDIS A. WESTMORE
United States Magistrate Judge